Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re: | 2010 TSPR 233 |
|  | 180 DPR \_\_\_\_ |
| Jessica Torres Viñals |  |

Número del Caso: CP - 2007 - 6

Fecha: 8 de diciembre de 2010

Oficina del Procurador General:

> Lcdo. José Enrico Valenzuela - Alvardo
> Procurador General Auxiliar

Abogada de la Parte Peticionaria:

> Lcda. Margarita Carrillo Iturrino

Materia: Conducta Profesional
(La suspensión será efectiva el 23 de diciembre de 2010, fecha en que se le notificó a la abogada de su suspensión inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jessica Torres Viñals

CP-2007-6

PER CURIAM

San Juan, Puerto Rico, a 8 de diciembre de 2010.

La licenciada Jessica Torres Viñals, en adelante, licenciada Torres Viñals, fue admitida al ejercicio de la abogacía el 30 de enero de 2001 y prestó juramento como notario el 16 de octubre de 2002.[1] El 9 de abril de 2007, el Procurador General presentó una Querella sobre conducta profesional contra la licenciada Torres Viñals por violaciones a los Cánones 23, 35 y 38 de Etica Profesional.

_____

[1] Es preciso señalar que la licenciada Torres Viñals tiene pendiente dos (2) Quejas ante este Foro, a saber, AB-2010-2 y AB-20106. Dichas Quejas fueron remitidas a la Oficina de la Procuradora General para investigación e informe. Regla 14(d) del Reglamento del Tribunal Supremo. 4 L.P.R.A. Ap. XXI-A.

Procedemos a relatar los acontecimientos procesales que motivaron la Querella, según surgen del expediente.

I

La Queja contra la licenciada Torres Viñals se originó con una Declaración Jurada de la licenciada Rosaura González Rucci[2], en adelante, licenciada González Rucci. Surge de la misma que la licenciada Torres Viñals, mientras era empleada de la licenciada González Rucci, se apropió de varios giros que pertenecían a clientes, los firmó, endosó y los depositó en su cuenta personal. Como resultado de dicha conducta se presentaron contra la licenciada Torres Viñals veinte (20) denuncias por violación a los Arts. 165, 166, 271 y 272 del Código Penal de Puerto Rico.[3]

Instada la Queja, referimos copia del expediente al Procurador General para la investigación e Informe correspondiente, conforme a la Regla 14(d) de nuestro Reglamento. Así las cosas, el 23 de noviembre de 2004 el Procurador General presentó el correspondiente Informe para someter a la consideración de este Tribunal la conducta incurrida por la licenciada Torres Viñals. El 18 de febrero de 2005 ordenamos a la licenciada Torres Viñals

---

[2] Para esa fecha la licenciada González Rucci estaba suspendida de la profesión.

[3] Surge del Informe Conjunto de las Partes que, estando pendiente de celebrarse la vista preliminar la licenciada Torres Viñals voluntariamente ofreció pagar el monto del dinero que se le imputaba haberse apropiado y falsificado con el único propósito de poner fin a los rigores del procedimiento criminal. No obstante, expresó que "ello no constituía una aceptación de los delitos imputados porque no había cometido delito alguno."

presentara contestación. El 21 de septiembre de 2005 la licenciada Torres Viñals presentó su Contestación a Queja.

El 24 de febrero de 2006 ordenamos al Procurador General examinara dicha contestación y sometiera un Informe Suplementario sobre la Queja instada. El Procurador General emitió Informe Suplementario.

Luego de examinar los documentos, y de ciertos trámites procesales, el 3 de noviembre de 2006 instruimos al Procurador General a presentar la correspondiente Querella. El 9 de abril de 2007 el Procurador General presentó Querella sobre conducta profesional contra la licenciada Torres Viñals, imputándole violaciones a los Cánones 23, 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX.

Mediante Orden emitida, peticionamos a la licenciada Torres Viñals a contestar la Querella incoada en su contra. La licenciada Torres Viñals presentó su contestación a las alegaciones expuestas en la Querella presentada. En su alegación responsiva la licenciada Torres Viñals negó que hubiera falsificado firmas en los giros de los clientes con el propósito de apropiarse ilegalmente de fondos. Planteó que la desaparición de los giros y cheques bancarios continuó ocurriendo luego de ella cesar en sus funciones. Planteó que ella efectuó el pago correspondiente a por lo menos dos (2) giros de quinientos dólares cada uno ($500.00), que la licenciada González Rucci sostenía estaban extraviados y que posteriormente aparecieron.

Planteó que la situación se debía al deficiente sistema de contabilidad que la licenciada González Rucci tenía en su oficina.

Luego de los trámites de rigor, el 29 de julio de 2009 designamos al Hon. Wilfredo Robles Carrasquillo, como Comisionado Especial para atender el procedimiento de autos. Posteriormente lo relevamos de dicha designación y nombramos al Hon. Charles Cordero. Tras celebrar una vista evidenciaría, el Comisionado Especial rindió su *Informe.*

Surge de las determinaciones de hechos del Comisionado Especial que la quejosa, a saber, licenciada González Rucci, le dio empleo a la licenciada Torres Viñals para que ésta asumiera la representación legal de todos los casos pendientes en su oficina. Lo anterior toda vez que la licenciada González Rucci había sido suspendida de la profesión por un término de seis (6) meses.[4] Dicha suspensión obedeció a que la licenciada González Rucci junto con su ex-socio había violado los Cánones 20, 29, 30 y 38 de Etica Profesional. El 6 de julio de 2001, autorizamos la reinstalación de la licenciada González Rucci.[5]

Alrededor de diciembre de 2001, la licenciada González Rucci se había reintegrado a su oficina y retenido los

---

[4] *In re Irizarry y González*, 151 D.P.R. 916 (2000).

[5] *In re González Rucci*, 154 D.P.R. 641 (2001). Surge del Informe del Comisionado Especial otro litigio en donde se vio envuelta la licenciada González Russi, informado por la licenciada Torres Viñals a fin restarle credibilidad al testimonio de la licenciada González Rucci conforme estimó el Comisionado Especial. (Véase, *González Rucci v. U.S. Inmigration & Naturalization Services,* 460 F. Supp. 2d 307.

servicios de la licenciada Torres Viñals. En esta etapa cabe apuntar que la práctica de la licenciada González Rucci eran mayormente casos de inmigración donde los clientes utilizaban los servicios de la abogada para tratar de lograr la ciudadanía americana o resolver problemas de visas expiradas. El procedimiento usual en la oficina de la licenciada González Rucci era que al cliente se le requería, en los casos apropiados, que trajera o un cheque certificado o un giro postal para presentar el formulario requerido por el Departamento de Inmigración. A veces el giro venía a nombre de *US Inmigration & Naturalization* y otras se dejaba el giro o cheque en blanco. En otras ocasiones, los clientes traían el dinero en efectivo y se le compraba el giro postal. Una vez recibido el giro o cheque, el mismo se grapaba al expediente del cliente donde se mantenía hasta el día de la cita con el Departamento de Inmigración, para ser entregado con el formulario requerido por éstos.

Poco tiempo después de haberse reintegrado a su oficina se le informó a la licenciada González Rucci que varios cheques y giros que habían sido grapados a los expedientes de los clientes faltaban. Al confrontar a la licenciada Torres Viñals sobre este particular, ésta inicialmente negó conocimiento de la razón por la cual faltaban esos cheques y giros. Luego de varios incidentes donde los mismos clientes se quejaron que no se habían presentado sus casos, y donde faltaban los cheques y giros

que se habían grapado a los expedientes, la licenciada Torres Viñals le admite a la licenciada González Rucci que ella se había apropiado de dichos cheques y giros.

Ante lo anterior, se hizo una lista de los casos donde faltaban cheques o giros resultando que la licenciada Torres Viñals se había apoderado de cinco mil seiscientos setenta dólares ($5,670). Eventualmente, la licenciada Torres Viñals rembolsó los dineros apropiados, excusándose con la licenciada González Rucci señalándole que había tomado el dinero porque tenía serios problemas económicos.[6] Esto motivó que la licenciada González Rucci le permitiera continuar trabajando en la oficina, aunque se le quitaron las llaves que daba acceso a dicha oficina.

Posterior a estos incidentes, se presentó otro cliente quejándose. Cuando la licenciada González Rucci fue a presentar el caso ante el Departamento de Inmigración faltaba el giro postal de setecientos dólares ($700) del cliente. La licenciada González Rucci pagó el dinero. Al confrontar a la licenciada Torres Viñals, ésta negó conocimiento alguno del dinero. La licenciada González Rucci consiguió copia del recibo del giro y el correo confirmó que el giro había sido cambiado y depositado en la cuenta de la licenciada Torres Viñals. El giro se había hecho a nombre del *US Inmigration Services*, endosado por

---

[6] Surge del Informe del Comisionado Especial que los rembolsos se hicieron mediante descuentos del sueldo de la licenciada Torres Viñals. En dos (2) ocasiones, la licenciada Torres Viñals pagó con cheques que no tenían fondos suficientes. La licenciada Torres Viñals pagó el balance de la deuda en efectivo al así exigírsele.

Jessica Torres Viñals y depositado en su cuenta. Ante estos hechos, la licenciada González Rucci se personó a la Unidad Investigativa de San Juan donde fue atendida por entre otras personas, la agente Senai Rodríguez.

Luego de hacerse la debida auditoría de las cuentas de banco de la licenciada Torres Viñals se encontró que no tan solo se había apropiado de los cinco mil seiscientos setenta dólares ($5,670) que ella ya había restituido, sino también se había apropiado ilegalmente de otros cinco mil treinta y cinco dólares ($5,035), razón por la cual se le radicaron acusaciones. Señala el Informe del Comisionado Especial:

> "…El *Modus Operandi* utilizado por la Lcda. Torres Viñas era apoderarse de los giros o cheques que estaban agrapados en los expedientes de los clientes. Luego si el giro o cheque estaba en blanco, ella ponía su nombre y lo depositaba en su cuenta (véase exhibit 2, páginas 1, 2, 3, 8 y 10). Si el giro o cheque estaba hecho a nombre del U.S. Inmigration & Naturalization Services, ella endosaba el mismo y los depositaba en su cuenta. (Véase exhibit 2, páginas 5, 6, 9 y 13). En otros casos, si el cheque estaba a nombre de U.S. Inmigration & Naturalization Services, ella le añadía las palabras "and/or Jessica Torres", y lo endosaba y depositaba en su cuenta de banco. (Véase exhibit 2, página 11).
>
> Según el testimonio de la agente Senai Rodríguez Figueroa, a quién se le dio entero crédito, ella entrevistó en varias ocasiones a la Lcda. Torres Viñals y esta primero negó haberse apropiado del dinero, pero al mostrarle los resultados de la auditoría de las cuentas de banco, la querellada le admitió que sí se había apoderado ilegalmente de los cheques y giros, y que los había depositado en su cuenta de banco.
>
> La Lcda. Torres Viñals fue arrestada y luego acusada por el Ministerio Público de haber violado los Artículos 166, 271, y 272 del Código

Penal. Durante estos procedimientos la Lcda. Torres Viñals rembolsó a la Lcda. González Rucci los otros $5,035.00 ilegalmente apropiado. En consecuencia el Fiscal acordó se archivará el caso bajo la Regla 247 de los Procedimientos Criminales porque la perjudicada (Lcda. González Rucci) se le "resarció en la totalidad" lo apropiado. (Véase, exhibit 1, página 3). No se le formularon cargos a la Lcda. Torres Viñals por los $5,670.00 previamente ilegalmente apropiados por ella porque ya estos se habían restituido. Los $5,035.00 fueron pagados por una hermana de la querellada." (Notas al calce omitidas)

Por último surge del Informe del Comisionado Especial que no fue convincente el testimonio de la licenciada Torres Viñals. Conforme su declaración, en muchas ocasiones los clientes llegaban al Departamento de Inmigración con ella y no tenían los giros o cheques certificados para pagar lo requerido por la agencia federal. Declaró que en muchas ocasiones el cheque no se encontraba dentro del expediente del cliente. Según su declaración para que el cliente no perdiera el turno, pagaba en efectivo y luego cuando el cliente regresaba con el giro o cheque certificado, o se encontraba el giro, ella lo endosaba y lo depositaba en su cuenta de banco. El Comisionado Especial expresa que no hubo una explicación lógica sobre los cheques sin fondo que le dio a la licenciada González Rucci, ni tampoco de cómo ella iba con los clientes al Departamento de Inmigración con tanto dinero en efectivo. A su vez, el Comisionado Especial acotó que no le pareció creíble que ella restituyera el dinero para evitar el proceso criminal. Las admisiones hechas de la licenciada Torres Viñals a la agente Senai Rodríguez Figueroa y a la

licenciada González Rucci quedaron probadas. Fue determinación del Comisionado Especial que la licenciada Torres Viñals restituyó el dinero porque era probable que en el juicio se hubiera encontrado culpable. Es menester puntualizar que el Comisionado Especial otorgó entera credibilidad a los testimonios de la agente Senai Rodríguez Figueroa y de la licenciada González Rucci.

Evaluados estos hechos, y conforme reseñado, el Comisionado Especial entendió que la licenciada Torres Viñals incurrió en violaciones a los Cánones 23, 35 y 38 de los de Ética Profesional.

Sometido el caso ante nuestra consideración, y contando con el beneficio del Informe de la Comisionada Especial y del Procurador General, así como la contestación de la licenciada Torres Viñals, resolvemos.

II

Reiteradamente hemos señalado que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. *In re Pujol Thompson*, 171 D.P.R. 683 (2006); *In re Izquierdo Stella*, 154 D.P.R. 732 (2001); *In re Matos González*, 149 D.P.R. 817 (1999); *In re Filardi Guzmán*, 144 D.P.R. 710 (1998).

El Canon 23 de Ética Profesional, en lo pertinente al caso de autos, le impone a los abogados el deber de velar porque la relación entre éstos y sus clientes sea transparente. *In re Álvarez Aponte*, 158 D.P.R. 140,

146 (1982); *In re Rivera Irizarry*, 155 D.P.R. 687, 693 (2001). La naturaleza fiduciaria de la relación entre el letrado y el cliente exige que exista una confianza absoluta entre ambos, especialmente en asuntos económicos. *Íd*. Por tal razón, el abogado tiene el deber de rendir cuentas de cualquier dinero o bien de un cliente que esté en su posesión y no debe mezclarlos con los suyos.

Conforme a lo dispuesto en el Canon 23, *supra*, hemos indicado que el retener, en forma no autorizada, sumas de dinero pertenecientes al cliente o disponer de ellas impropiamente constituye una conducta gravemente impermisible de un abogado e infringe dicho precepto legal. Véase, *In re Marrero Figarella*, 146 D.P.R. 541, 557 (1998). Tal conducta lesiona la naturaleza fiduciaria que rige la relación entre el letrado y su cliente, y afecta la imagen de dignidad e integridad que debe guardar y proyectar todo abogado y la reputación de la profesión legal en la comunidad. *In re Rivera Lozada*, res. el 26 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 120, 2009 J.T.S. 123; *In re Vázquez O´Neill*, 121 D.P.R. 623, 627 (1988). Es por ello que se ha determinado que constituye un grave atentado a la relación fiduciaria entre abogado y cliente que el letrado retenga una suma de dinero que le adelantó el cliente en concepto de honorarios sin realizar la gestión a la cual se comprometió. *In re Ramírez Ferrer*, 147 D.P.R. 607, 614 (1999).

Sobre la retención de fondos, debemos señalar que un abogado está sujeto a ser sancionado por retener sumas de dinero pertenecientes a sus clientes aunque el letrado las hubiese devuelto. *In re Vázquez O´Neill*, *supra*, pág. 628. Por lo tanto, la dilación en devolver dichos fondos de por sí será causa suficiente para infringir el Canon 23, *supra*. *Íd.*, *In re Ramírez Ferrer*, *supra*, pág. 614; *In re Arana Arana*, 112 D.P.R. 838, 844 (1982).

Por otra parte, también constituye una violación al Canon 23, *supra*, el que un abogado retenga indebidamente sumas de dinero pertenecientes a sus clientes aún cuando no tenga la intención de apropiarse de ellas permanentemente. *In re Arana Arana*, *supra*, pág. 844.

Por otro lado, hemos resuelto que el Canon 35 de Ética Profesional le impone a los abogados un deber general de ser sinceros y honrados para con sus representados y sus compañeros abogados, así como para con los tribunales. 4 L.P.R.A. Ap. IX, C. 35. Véase, además, *In re Padilla Rodríguez*, 145 D.P.R. 536 (1998); *In re Franco Rivera, Masini Soler*, 134 D.P.R. 823 (1993). Añade el precepto, que no es sincero ni honrado utilizar medios inconsistentes con la verdad, ni se debe inducir a error al juzgador utilizando artificios o una falsa relación de los hechos o del derecho. Dichos deberes se exigen en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es uno siempre incondicional. *In re Fernández de Ruiz*, 167 D.P.R. 661

(2006). La verdad es un atributo inseparable del ser abogado, y sin ésta, la profesión jurídica no podría justificar su existencia. *In re Busó Aboy*, 166 D.P.R. 49 (2005).

Reiteradamente hemos expresado que el Canon 35 exige que la conducta de todo miembro de la profesión ante los tribunales, sea sincera y honrada. *In re López González*, 171 D.P.R. 567 (2007). Esto en virtud de que todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales. *In re Montañés Miranda*, 157 D.P.R. 275 (2002). En fin, un abogado que falta a la verdad infringe el Canon 35, independientemente de los motivos que lo movieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno. *In re Grau Acosta*, 172 D.P.R. 159 (2007).

El Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, exige que la conducta de todo miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. También establece que no es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. *Íd.*

Las obligaciones consagradas en el Canon 35, *supra*, constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión. *In re Martínez, Odell I*, 148 D.P.R. 49, 54 (1999). Es por ello que todo abogado debe observarlas, no sólo en la tramitación de pleitos sino en todas las facetas que desempeñe. *Íd.*

Anteriormente, este Tribunal ha señalado que "[l]a verdad es un atributo inseparable del ser abogado por lo que, su compromiso con ésta, debe ser incondicional". *In re Rivera Lozada*, res. el 26 de junio de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 120, 2009 J.T.S. 123. Véase, además, *In re Grau Acosta*, 172 D.P.R. 159, 175 (2007); *In re Busó Aboy*, 166 D.P.R. 49, 63 (2005). Por tal razón, un abogado que falta a la verdad infringe el Canon 35, *supra*, independientemente de los motivos que lo movieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno. *In re Grau Acosta*, *supra*, pág. 175. A tenor con lo anterior, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este Canon aunque no haya obrado de mala fe o deliberadamente, no haya tenido la intención de engañar, o no haya causado daño a un tercero. *In re Zapata Torres*, res. el 24 de agosto de 2009, 176 D.P.R.___ (2009), 2009 T.S.P.R. 146, 2009 J.T.S. 149.

La Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Por tanto, sus determinaciones fácticas merecen nuestra mayor deferencia. Ahora bien, de igual manera hemos resuelto que, aunque este Tribunal no está obligado a aceptar el Informe del Comisionado Especial nombrado para atender una querella contra un abogado, pudiendo adoptar, modificar o rechazar tal Informe, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre perjuicio, parcialidad o error manifiesto. *In re Gordon Menéndez I*, 171 D.P.R. 442 (2007); *In re Moreira Avillán*, 147 D.P.R. 78, 86 (1991); *In re Soto López*, 135 D.P.R. 642 (1994); *In re Morales Soto*, 134 D.P.R. 1012 (1994).

Con estos preceptos en mente, atendemos la controversia ante nuestra consideración.

III

El primer cargo de la Querella le imputa a la licenciada Torres Viñals haber actuado contrario al Canon 23 de Etica Profesional, *supra*, el cual conforme reseñado dispone que la naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. Surge de la Querella que la licenciada Torres Viñals admitió haberse apropiado de varios giros que pertenecían a los clientes y haberlos firmados, endosado y depositado en su cuenta personal.

La licenciada Torres Viñals en su Contestación a la Querella y sobre lo antes señalado, negó haber aceptado que se apropió de giros pertenecientes a sus clientes. Entiende lo anterior es la versión de la licenciada González Rucci. Asevera que jamás falsificó firma alguna con el propósito alegado de haberse apropiado ilegalmente de fondos pertenecientes a sus clientes o a la licenciada González Rucci. Esboza que no debe pasarse por alto que autorizó voluntariamente una auditoría de su cuenta de banco precisamente porque era consciente de que no había incurrido en defraudación alguna.

En cuanto al segundo cargo, se le imputa a la licenciada Torres Viñals incurrir en conducta violatoria del Canon 35 de Etica Profesional, el cual dispone, *inter alia*, que la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. La Querella expresa que la conducta de la licenciada Torres Viñals no fue sincera ni honrada al apropiarse de dinero perteneciente a sus clientes y luego mentirle a su superior, la licenciada González Rucci lo que demuestra deslealtad y falta de honestidad de parte de la primera a la segunda, conducta que lesiona la imagen de la profesión legal. La Querella expresa que la licenciada González Rucci cuestionó en un sinnúmero de ocasiones a la licenciada Torres Viñals sobre los giros extraviados, no obstante ésta negaba su responsabilidad sobre los mismos.

No fue hasta que la licenciada González Rucci le mostró un giro suscrito por ella que aceptó su responsabilidad. Aun así la licenciada González Rucci le concedió una nueva oportunidad, permitiéndole continuar trabajando en la oficina hasta que meses más tarde incurrió nuevamente en la misma conducta. En esa ocasión, y de manera reiterada la licenciada Torres Viñals nuevamente le mintió a la licenciada González Rucci.

La licenciada Torres Viñals en cuanto a este segundo cargo señala que no incurrió en la conducta imputada. Alegó que de haberse extraviado algún giro era por no llevarse un sistema efectivo de contabilidad. Apuntó y citamos

> La querellada pagó el importe de los giros alegadamente extraviados, a pesar de que nada había tenido que ver con el extravío de los mismos. Lo hizo para acallar a la Lcda. González porque como era la única otra abogada en la oficina.

Expresó que en dos (2) ocasiones le fueron rembolsados el importe de ciertos giros extraviados y que luego aparecieron. Acota, a su vez, que ninguno de los clientes presentó alguna Queja contra ella no se vieron afectados.

En el Cargo III se le imputó a la licenciada Torres Viñals conducta violatoria del Canon 38 de Etica Profesional, el cual dispone, entre otros extremos, que el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. De la Querella instada surge que la licenciada Torres Viñals

actuó contrario a los principios que el Canon enuncia al falsificar firmas para apropiarse ilegalmente de fondos pertenecientes a sus clientes.

Sobre lo anterior es contención de la licenciada Torres Viñals que en su mente nunca existió la intención delictiva de apropiarse de fondos de los clientes o defraudarlos.

No podemos aceptar las alegaciones de la licenciada Torres Viñals las cuales no concuerdan con las determinaciones de hechos del Comisionado Especial. En primer término, nos sorprende que guarda silencio respecto a los dineros tomados, en la primera ocasión, y sus excusas a la licenciada González Rucci. A su vez, y al igual que el Comisionado Especial, llama la atención que no ofreciera razones de porque ella iba con los clientes al Departamento de Inmigración con tanto dinero en efectivo. Observamos que la licenciada Torres Viñals ofrece versiones incompatibles sobre los hechos ocurridos. Oportuno es aquí recordar aquellas palabras del Juez Asociado señor Serrano Geyls cuando dijo: "[l]os jueces no podemos ser tan ingenuos para creer lo que nadie más creería". Véase *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573 (1961).

Según dispone nuestro Reglamento le corresponde al Comisionado Especial designado celebrar una vista para celebrar la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial se encuentra en mejor posición para aquilatar la prueba testifical y

adjudicar credibilidad, por lo que sus determinaciones fácticas merecen nuestra mayor deferencia. *In re Rivera Lozada*, res. en 26 de junio de 2009, ___ D.P.R.___ (2009), 2009 T.S.P.R. 120, 2009 J.T.S. ___.

En el caso de autos, el Comisionado Especial acotó que no le pareció creíble que la licenciada Torres Viñals restituyera el dinero para evitar el proceso criminal. A su vez, fue claro y específico que las admisiones hechas de la licenciada Torres Viñals a la agente Senai Rodríguez Figueroa y a la licenciada González Rucci quedaron probadas. Fue determinación del Comisionado Especial que la licenciada Torres Viñals restituyó el dinero porque era probable que en el juicio se hubiera encontrado culpable. Es menester puntualizar que el Comisionado Especial otorgó entera credibilidad a los testimonios de la agente Senai Rodríguez Figueroa y de la licenciada González Rucci. Sus conclusiones nos merecen deferencia, en particular cuando no se nos ha demostrado perjuicio, parcialidad o error manifiesto.

Finalmente a pesar de que la licenciada Torres Viñals no fue convicta por los delitos que se le imputaron no impide que este Tribunal ejerza su jurisdicción disciplinaria para evaluar su conducta. *In re Caratini Alvarado*, 135 D.P.R. 642 (1994).

Ante los hechos expuestos y la falta de evidencia el expediente que rebatan lo anterior resolvemos que la

licenciada Torres Viñals incurrió en violaciones a los Cánones 23, 35 y 38 de Ética Profesional.

IV

Por los fundamentos antes expresados, suspendemos indefinidamente a la licenciada Torres Viñals del ejercicio de la abogacía y la notaría a partir de la notificación de la presente Opinión *Per Curiam*.

La licenciada Torres Viñals tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizados. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

El Alguacil de este Tribunal procederá a incautarse de la obra y sello notarial de la abogada suspendida, debiendo entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe a este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jessica Torres Viñals

                         CP-2007-6


                         SENTENCIA


San Juan, Puerto Rico, a 8 de diciembre de 2010.

        Por los fundamentos antes expresados, suspendemos indefinidamente a la licenciada Torres Viñals del ejercicio de la abogacía y la notaría a partir de la notificación de la presente Opinión *Per Curiam*.

        La licenciada Torres Viñals tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizados. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

        El Alguacil de este Tribunal procederá a incautarse de la obra y sello notarial de la abogada suspendida, debiendo entregar los mismos a la Directora de la Oficina de Inspección de Notarías para la correspondiente investigación e informe a este Tribunal.


        Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina.



                    Larissa Ortiz Modestti
              Secretaria del Tribunal Supremo, Interina